FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 26, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MEGAN FUHRMAN,<br><br>                Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | NO: 1:17-CV-3088-RMP<br><br>ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Megan Fuhrman, **ECF No. 12**, and the Commissioner of Social Security (the "Commissioner"), **ECF No. 13**. Ms. Fuhrman sought judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of her claim for Social Security disability insurance benefits. The Court has reviewed the motions, the administrative record, and is fully informed. For the reasons stated below, the Commissioner's motion, ECF No. 13, is granted, and Ms. Fuhrman's motion is denied, resulting in a denial of benefits.

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

# BACKGROUND

## A. Ms. Fuhrman's Claim for Benefits and Procedural History

Ms. Fuhrman applied for disability insurance benefits, under Title II of the Social Security Act ("Act"), through an application filed on December 29, 2013. Administrative Record ("AR") 156–57.[1] Ms. Fuhrman was 33 years old at the time she applied for benefits. AR 71. She asserted that her recurrent bouts of major depression and anxiety prevent her from engaging in full-time work.

## B. November 12, 2015 Hearing

Ms. Fuhrman was represented by attorney Chad Hatfield at her hearing before Administrative Law Judge ("ALJ") Laura Valente on November 12, 2015, in Yakima, Washington. Ms. Fuhrman responded to questions from her attorney and Judge Valente. A vocational expert, Kimberly Mullinax, also responded to questions from Ms. Fuhrman's attorney and the ALJ.

Ms. Fuhrman testified that she earned a bachelor's degree in 2003. At the time of the hearing, and for several years prior, Ms. Fuhrman lived with her parents. Ms. Fuhrman asserted that her disability onset date was June 18, 2011, when she left a job at a Costco call center due to her inability to cope with the acute anxiety and depression that she felt while attempting to perform her work duties there. Approximately six months after leaving her position at the call center, Ms. Fuhrman

---

[1] The AR is filed at ECF No. 9.

began working as a teacher's aide at the preschool. After completing a child development associate's certificate in August 2012, Ms. Fuhrman began working part-time as a lead teacher at the church preschool during the school year. One month before the administrative hearing in this matter, Ms. Fuhrman began teaching full-time at the preschool. Ms. Fuhrman explained that, by the time of the hearing, she had worked longer at the preschool than she had worked anywhere else in her life, and she felt the best she has in her life. Ms. Fuhrman later explained that she feels more comfortable working with children than with adults, and she has received positive performance reviews throughout her time teaching at the preschool.

Ms. Fuhrman testified that her supervisors, who are members of the church's "Preschool Board," are aware of her dyslexia and history of coping poorly with stress and that she receives a variety of support to perform her work as a preschool teacher, including proofreading assistance and support in interacting with some of the preschoolers' parents. Ms. Fuhrman further testified that she was experiencing side effects from the medications she took to manage her depression and anxiety symptoms. The side effects included mild hand tremors, compromised memory, and insomnia. However, Ms. Fuhrman explained that she had not sought a modification to her medications since 2010 because it had taken significant time and effort to find a regimen that adequately managed her symptoms while not causing other side effects.

**C. ALJ's Decision**

On December 22, 2015, the ALJ issued an unfavorable decision. AR 11–26. Applying the five-step evaluation process, Judge Valente found:

> **Step one:** Ms. Fuhrman has not engaged in substantial gainful activity since the alleged onset date of June 18, 2011. Ms. Fuhrman left her position at a Costco call center in summer 2011. From January 2012 until May 2012, Ms. Fuhrman worked 3.5 hours four days per week as a teacher's aide at the preschool run by the church she attends. In September 2012, Ms. Fuhrman began working as a lead teacher at the preschool. For the 2012, 2013, and 2014 school years, Ms. Fuhrman taught one class, from 9:00 a.m. until 11:30 a.m. In September 2015, Ms. Fuhrman began teaching a second, afternoon class from 12:30 to 3:00 p.m. three days per week. The ALJ noted that Ms. Fuhrman's counsel had advised that Ms. Fuhrman's earnings were consistent with substantial gainful activity beginning in October 2015 but had not specified how much Ms. Fuhrman was earning, and the ALJ could not find any documentation in the record to support a finding of substantial gainful activity.
>
> **Step two:** Ms. Fuhrman has the following severe impairments: affective disorder, anxiety disorder, and a learning disorder. The ALJ found that, although there were references to hand or wrist tendonitis in the record, the claimant did not allege that a medical condition was the basis for her disability

in her application, and any hand or wrist issues were not severe impairments for claimant.

**Step three:** Plaintiff's impairments, or combination of impairments, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Residual Functional Capacity ("RFC"):** The ALJ found that Ms. Fuhrman has the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she has sufficient concentration to understand, remember and carry out complex tasks. The claimant can maintain concentration and pace for complex tasks in two-hour increments with usual and customary breaks throughout an eight-hour workday. She will require an additional five-minute break in addition to usual and customary breaks. The claimant can take this break at her workstation. She can work superficially and occasionally with the general public (superficial means she can greet the public and refer the public to others to resolve their demands and requests, but does not have to resolve those demands or requests herself). The claimant can interact occasionally with supervisors and with occasional interaction it is expected that she can respond appropriately to supervisor criticism. She can work with a small group of up to 10 coworkers and can respond to workplace changes as would be required for complex tasks.

AR 16.

The ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her mood and anxiety symptoms, as well as her learning disorder, were not entirely credible. Ultimately, the ALJ relied on Plaintiff's positive performance of her preschool teaching duties to conclude that "[t]reatment records do show her telling providers she could not handle

the stress of full time work, but aside from her own assertions there appears to be little support for this." AR 20. The ALJ continued:

> Additionally, even if the claimant were unable to tolerate the stresses of a full time teaching job, there are many less stressful occupations that exist in the national economy. The claimant has not provided any convincing reason why she could not perform a full time job that entails less intensive public interaction than her prior job at Costco.

AR 20.

**Step four:** Ms. Fuhrman is able to perform past relevant work as a cook helper and tallier, which would not require the performance of work-related activities precluded by her RFC.

**Step five:** Ms. Fuhrman was not disabled for purposes of the Social Security Act from June 17, 2011, through the date of the ALJ's decision.

## APPLICABLE LEGAL STANDARDS

**A. Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance.

*Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

**B. Definition of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a benefits claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

**C. Sequential Process**

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically

severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of her residual functional capacity and age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

1. Did the ALJ erroneously discount the opinions of Ms. Fuhrman's medical providers and the state agency psychological consultants?
2. Did the ALJ erroneously reject Ms. Fuhrman's subjective complaints?
3. Did the ALJ conduct an adequate analysis leading to the conclusion that Ms. Fuhrman could perform her past relevant work as a cook helper and tallier?
4. At step five, did the ALJ meet her obligations in determining whether Ms. Fuhrman can perform another job?

## DISCUSSION

***Treatment of opinions of Ms. Furhman's medical providers and other non-examining state agency psychological consultants***

Ms. Fuhrman argues that the ALJ improperly rejected the opinions of her treatment providers, nurse practitioner Theresa Hicks, and physician's assistant

Shannon Neer, as well as two state agency psychological consultants, Michael Brown, Ph.D, and Thomas Clifford, Ph.D.

With respect to medical opinions, an ALJ must accord more weight to a treating physician's opinion than an examining physician's, and an examining physician's opinion carries more weight than a non-examining, reviewing, or consulting physician's opinion. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ must articulate "specific and legitimate" reasons to reject the opinion of a consultative acceptable medical source.

However, under the regulations that apply to Ms. Fuhrman's claim, as it was filed before March 27, 2017, neither a nurse practitioner nor a physician's assistant is an "acceptable medical source" for purposes of according controlling weight to his or her opinion. 20 C.F.R. §§ 404.1527, 416.913(a). While an ALJ must consider and evaluate all medical evidence, along with the remaining record, the ALJ may reject the opinions of nurse practitioners, physician's assistants, and mental health therapists for "germane reasons," rather than the higher standard of "specific and legitimate reasons" applied to the opinions of acceptable medical sources. 20 C.F.R. § 404.1513(a) (version in effect prior to Jan. 18, 2017).

In determining Ms. Fuhrman's RFC, the ALJ assigned "some weight" to the opinion of a psychiatrist, Jamie Simmons, M.D., who treated Ms. Fuhrman around

the time of Ms. Fuhrman's transition away from the call center position. AR 21. Dr. Simmons noted in a June 2, 2011 report:

> The patient states that she has been having panic attacks that are severe enough that she has to leave work. She works in the call center at Costco. She is afraid that she won't answer the phone right, she is afraid that will [sic] be yelled at or cursed at. She doesn't feel that she can remain in the work environment. . . . I agree that for one of Megheans [sic] temperament working Call Center is not the best choice. I would like to see Meghan work at finding another job that suited her and work through the panic attacks rather than go on disability. Meghan agrees that she is capable of working, just not at then [sic] high a stress of a job where people are yelling and cussing at her all the time.

AR 275. In follow-up visits to Dr. Simmons, Ms. Fuhrman reported doing well and having no complaints after managing her symptoms with medication; Ms. Fuhrman stopped seeing Dr. Simmons in approximately mid-2013.

Theresa Hicks, ARNP

Judge Valente accorded little weight to the opinion of Ms. Fuhrman's long-time therapist, Nurse Hicks, who provided a written statement on behalf of Ms. Fuhrman on February 5, 2014. Nurse Hicks reported that, since Ms. Fuhrman became her patient in 2002, Ms. Fuhrman had left five jobs due to major depressive episodes, Ms. Fuhrman required months to recover from each episode. Nurse Hicks also opined that Ms. Furhman "should remain a part-time employee to keep the level of stress where she can handle it without going into another Major Depressive Episode requiring leaving work and possible hospitalization." AR 285. Nurse Hicks

speculated that, more probably than not, Ms. Fuhrman would miss four or more days of work per month if she were working a 40-hour per week schedule.

In assigning little weight to Nurse Hicks' opinion, Judge Valente noted that the nurse practitioner "did not cite any objective signs in support of the degree of limitation she opined, which is not supported by the treatment records including those from Ms. Hicks." AR 23. Apart from Nurse Hicks' bare assertion, the medical and other records do not corroborate that Ms. Fuhrman left more than the Costco job because of mental health symptoms related to the work environment. Nor does the record contain anything to indicate that Ms. Fuhrman has shown up late for work or missed an inordinate amount of work for mental health reasons. Rather, the record indicates that Ms. Fuhrman's job performance since leaving the call center position and beginning work at the preschool has been very good. Apart from the records documenting Ms. Fuhrman's struggle with working at the call center, there is no evidence to support that working has resulted in a deterioration of Ms. Fuhrman's condition. Therefore, the ALJ's reasons for rejecting Nurse Hicks' opinion as to Ms. Fuhrman's ability to work full-time are germane.

Shannon Neer, PA

Ms. Neer wrote that it was her medical opinion that "Ms. Fuhrman's health and future well-being are absolutely dependent on her being able to remain in her current profession as a teacher without concern that she would one day be unable to continue due to a change in her SSI case plan." AR 374. The ALJ assigned no

weight to Ms. Neer's opinion, finding "[t]he claimant is not receiving SSI and her preference to work as a teacher part time rather than in some other full time occupation does not provide a basis for awarding disability benefits." AR 23. The ALJ's reasons for rejecting Ms. Neer's testimony also were germane. Ms. Neer's opinion was based on the false premise that Ms. Fuhrman was already receiving SSI benefits, and Ms. Neer's conclusory statement that Ms. Fuhrman's health depended on her remaining in her profession and working part-time was undermined by substantial evidence in the record that Ms. Fuhrman had not relapsed since she recovered from the stress of working at the call center facility and had successfully taken on a progressively greater role at the preschool.

<u>Drs. Clifford and Brown</u>

These state agency consultants did not examine Ms. Fuhrman, but instead reviewed her records and completed mental residual functional capacity assessments. Both concluded that Ms. Fuhrman is capable of performing simple as well as some complex tasks and could interact appropriately with a supervisor and a small group of co-workers and could interact infrequently and superficially with the general public. Both also concluded that Ms. Fuhrman would work best in a stable, low-pressure setting. The ALJ gave these assessments "some weight" and rejected the conclusion that Ms. Fuhrman would "work best" in a stable, low-pressure setting. AR 22, 79, and 93. The ALJ's reason for giving the consultants' ultimate conclusion less weight was germane: the relevant inquiry is not what work

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

environment is ideal for a claimant. Rather, the inquiry in determining an individual's RFC is the maximum level of work or degree of exertion that a person is capable of performing. *See* SSR 96-8, 1996 SSR LEXIS 5, 1996 WL 374184 (Jul. 2, 1996) ("RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."). Therefore, the portion of the consultants' opinions that the ALJ rejected did not apply to the requisite determination of Ms. Fuhrman's maximum remaining ability to do sustained work activities.

### *Treatment of Ms. Fuhrman's subjective complaints*

An ALJ must provide "'specific, cogent reasons'" for disbelieving a claimant's complaints. *Lester*, 81 F.3d at 834 (quoting *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). The ALJ undertakes a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or combination of impairments, could reasonably be expected to cause "some degree of the symptom." *Lingenfelter*, 504 F.3d at 1036. Where an ALJ finds no evidence of malingering, the ALJ may "'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so'"

*Brown-Hunter v. Colvin*, 806 F.3d 487, 492–92 (9th Cir. 2015) (*quoting Lingefelter*, 504 F.3d at 1036).

A credibility determination is appropriately in the province of the ALJ, and it is not the reviewing court's role to disturb that determination unless it appears that the ALJ arbitrarily discredited the claimant's testimony. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Among the factors that an ALJ may consider when determining credibility are the claimant's daily activities, inadequately explained failure to follow a prescribed course of treatment, and the claimant's work record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In this matter the ALJ found that Ms. Fuhrman's statements concerning the intensity, persistence and limiting effects of the symptoms related to her medically determinable impairments of depression and anxiety were "not entirely credible." AR 18. The ALJ did not conclude that Ms. Fuhrman was malingering.

The Court finds that the ALJ's decision provided one or more clear and convincing reasons for finding that Ms. Fuhrman's assertion that she could not handle the stress of full-time work was less than fully credible. Namely, the ALJ relied on substantial evidence in the record in determining that Plaintiff's depression and anxiety-related symptoms "markedly" improved with treatment after she left her call center position. AR 19.

Substantial evidence in the record also supports that Plaintiff's condition was stable and well-managed by medication, without Plaintiff seeking any changes to her

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

medication regimen, for approximately three years before the hearing. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The record also supports that Ms. Fuhrman was taking on progressively more duties and hours at work and did not miss any work due to her mental health issues. Therefore, the ALJ was justified in determining that Ms. Fuhrman's assertions to providers and at the hearing that she could not handle the stress of full time work were not entirely reliable.

***Legal sufficiency of ALJ's consideration of Plaintiff's ability to do her previous work***

In determining a claimant's RFC, the ALJ must consider all relevant evidence in the case record to assess the claimant's limitations and restrictions from the medically determinable impairment and determine the individual's ability to do work-related activities. SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184 (July 2, 1996).

The ALJ specifically determined that there was not enough evidence in the record to support that Plaintiff engaged in substantial gainful activity as a preschool teacher. Therefore, Judge Valente looked farther back in Plaintiff's employment record to her relatively short-term work as a tallier and cook helper. As the Court already found, substantial evidence in the record supported the ALJ's determination of Ms. Fuhrman's RFC, which included an ability to perform a full range of work at

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

all exertional levels, with several nonexertional, mental limitations that restrict her ability to maintain concentration and pace and interact with others. The ALJ incorporated those limitations into the hypothetical that she posed to the vocational expert, who testified that an individual coping with such restrictions could work as a cook helper and tallier. Therefore, the Court finds no error on this basis.

### *Legal sufficiency of ALJ's determination that Plaintiff could adjust to other full-time work than she has performed in the past*

After determining the Ms. Fuhrman retains the ability to perform two of her previous jobs, the ALJ posed questions to the vocational expert regarding what jobs a hypothetical claimant with Ms. Fuhrman's RFC could perform in the national economy. The vocational expert testified that a hypothetical claimant with the same restrictions and capabilities could work as an industrial cleaner, kitchen helper, and laundry worker II. AR 58–59. As the Government argues, Ms. Fuhrman's assignment of error to the ALJ in determining the other work that Ms. Fuhrman could perform merely were reassertions of Plaintiff's contention that the RFC was flawed. Having found that the ALJ relied on substantial evidence in the record in determining the extent of Ms. Fuhrman's limitations, the Court finds that the ALJ appropriately relied on the vocational expert's testimony in finding that Ms. Fuhrman could successfully adjust to other work that exists in significant numbers in the national economy.

**CONCLUSION**

Ms. Fuhrman argues on appeal that "[s]ince the alleged onset date, [she] has been unable to sustain competitive employment on a regular and continuing basis due to a combination of impairments, including anxiety, depression, learning disorder, and wrist tendonitis." ECF No. 12 at 3. While the record supports that Ms. Fuhrman has struggled since at least 2002 with clinical depression and anxiety, she also has remained in the same, part-time employment, since September 2012 and has successfully taken on progressively more responsibilities and work hours without any apparent setbacks. In addition, while the Court recognizes that the work environment is particularly supportive to Ms. Fuhrman, the Court does not identify significant accommodations that would not be available to anyone in the lead teacher position, regardless of abilities and limitations.

Of course, Ms. Fuhrman may decide to continue to work part-time or full-time as a preschool teacher at the church that she attends, as that endeavor provides a particularly supportive environment with minor adjustments to the job duties and conditions, capitalizes on her skillset, and ensures an opportunity to work with children. However, that decision does not establish that Ms. Fuhrman is unable to participate in "any substantial gainful work." *See* 42 U.S.C. § 423(d)(2)(A). The ALJ who heard Ms. Fuhrman's claim for benefits at the agency level conducted a thorough "individualized, functional inquiry into the effect of medical problems on a person's ability to work." *See Sullivan v. Zebley*, 493 U.S. 521, 528 (1990). Judge

ORDER DENYING PLAINTIFF'S AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

Valente's conclusion that Ms. Fuhrman is capable of working full-time at a number of jobs available in the national economy, whether or not she so chooses, is supported by substantial evidence in the record. The denial of benefits was not based on legal error. Therefore, reversal or remand is not warranted on any of the grounds that Ms. Fuhrman raises, and judgment shall be entered for the Commissioner, accordingly.

**IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

3. Judgment shall be entered for Defendant.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter Judgment as outlined above, provide copies to counsel, and **close the case**.

**DATED** March 26, 2018.

                            *s/ Rosanna Malouf Peterson*
                            ROSANNA MALOUF PETERSON
                               United States District Judge